# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# NORTHERN DIVISION
# AT COVINGTON

**CIVIL ACTION NO. 10-149-DLB**

**SUSAN FARWELL MCCUBBIN**                                               **PLAINTIFF**

vs.                     **MEMORANDUM OPINION & ORDER**

**MICHAEL J. ASTRUE, Commissioner**
**SOCIAL SECURITY ADMINISTRATION**                             **DEFENDANT**

\* \* \* \* \* \* \* \* \* \*

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record and the parties' dispositive motions, will affirm the Commissioner's decision, as it is supported by substantial evidence.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Susan Farwell McCubbin filed an application for a period of disability and disability insurance benefits (DIB) on July 1, 2007. (Tr. 130-34). Plaintiff's earnings record shows that she has acquired sufficient coverage to remain insured through December 31, 2011. (Tr. 12). At the time of filing, Plaintiff was 46 years old and alleged a disability onset date of June 15, 2007. (Tr. 130). Plaintiff alleges she is unable to work due to neck problems and bilateral carpal tunnel syndrome. (Tr. 223, 234). Plaintiff has a high school education and past relevant work as a data entry clerk (Tr. 224, 227). After her alleged disability onset date, she worked twelve and one-half hours each week until she stopped

1

working in September 2007.  (Tr. 27, 223).

Plaintiff's claim was denied initially and again on reconsideration.  (Tr. 92-94, 98-100).  At Plaintiff's request, an administrative hearing was conducted on October 1, 2009 before Administrative Law Judge (ALJ) Don C. Paris.  (Tr. 18-61).  On October 21, 2009, ALJ Paris ruled that Plaintiff was not disabled and not entitled to disability insurance benefits.  (Tr. 10-17).  This decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on May 13, 2010.  (Tr. 1-3).

The present action was filed on July 9, 2010.  (Doc. # 2).  The matter has culminated in cross-motions for summary judgment, which are now ripe for adjudication. (Docs. # 11, 14).

## II. DISCUSSION

### A. Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See id.* Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). Moreover, even if there is evidence favoring Plaintiff's side, the Commissioner's findings must be affirmed if supported by substantial evidence.

2

*Listenbee v. Sec'y of Health & Human Servs.*, 846 F.2d 345, 349 (6th Cir. 1988). Similarly, an administrative decision is not subject to reversal merely because substantial evidence would have supported the opposite conclusion. *Smith v. Chater*, 99 F.3d 780, 781 (6th Cir. 1996).

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments, alone or in combination, are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform her past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### B.     The ALJ's Determination

At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 1, 2007, the alleged onset date. (Tr. 12). At Step 2, the ALJ found that Plaintiff had the following severe impairments: bilateral carpal tunnel syndrome, right worse than left, and degenerative disc disease of the cervical spine, status post cervical fusion C4-C5 and C5-C6 with anterior cervical diskectomy. (Tr. 12).

At Step 3, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 12). Specifically, the ALJ evaluated Plaintiff's impairments under Listing 1.04 (Disorders of the spine) and Listing 11.00

(Neurological Disorders) and concluded that Plaintiff's condition did not meet or equal the necessary criteria under either listing. (Tr. 13).

At Step 4, the ALJ determined that Plaintiff retains the residual functional capacity (RFC) to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) with the following limitations: occasional lifting/carrying of 10 pounds; frequent lifting/carrying less than 10 pounds; standing/walking a total of 6 hours in an 8-hour day; sitting 6 hours in an 8-hour day; no more than frequent pushing/pulling or use of hand controls with upper extremities; only occasional climbing stairs/ramps, never ladders/ropes/scaffolds; only occasional stooping, kneeling or crouching; never crawling; only occasional reaching in all directions including overhead; no more than frequent handling ("handling" is defined as seizing, holding, grasping, turning or otherwise working primarily with the whole hand); and no frequent flexion or extension of the head from side to side. (Tr. 13). The ALJ also found that Plaintiff should avoid concentrated exposure to full-body vibration. (Tr. 13). Based upon this RFC, the ALJ concluded that Plaintiff was able to perform her past relevant work as a data entry clerk. (Tr. 16).

In the alternative, the ALJ proceeded to the final step of the sequential evaluation. At Step 5, the ALJ found that Plaintiff was born on January 31, 1961 and was 46 years old, which is defined as a younger individual age 45-49, on the alleged disability onset date. (Tr. 16). *See* 20 C.F.R. § 404.1563. The ALJ also found that Plaintiff has at least a high school education and is able to communicate in English. (Tr. 16). Considering Plaintiff's age, education, work experience and residual functional capacity, the ALJ determined that a significant number of other jobs exist in the national economy that Plaintiff can perform. (Tr. 16). ALJ Paris therefore concluded that Plaintiff has not been under a disability within

the meaning of the Social Security Act since Plaintiff's alleged onset disability date of July 1, 2007 through the date of the decision. (Tr. 17).

## C. Analysis

Plaintiff advances two arguments on appeal. First, Plaintiff alleges that the ALJ erred by giving more credibility to the opinions of the "lower administrative level" physicians than the examining or treating physicians. Second, Plaintiff argues that the ALJ improperly relied upon testimony from the vocational expert, because the hypothetical question posed by the ALJ did not accurately describe Plaintiff's functional limitations. Specifically, Plaintiff contends that the ALJ failed to place limitations on Plaintiff's ability to use her hands in the hypothetical question posed to the VE. Each of these arguments will be addressed in turn.

### 1. The ALJ Properly Weighed the Medical Evidence in the Record

Plaintiff alleges that the ALJ erred by giving more credibility to the opinions of the "lower administrative level" physicians than the examining and treating physicians.[1] Specifically, Plaintiff takes issue with the ALJ's decision to reject the opinions of Drs. Luis Pagani and Martin Fritzhand. Plaintiff's argument is unavailing.

#### I. Dr. Luis Pagani

"Generally, the opinions of treating physicians are given substantial, if not controlling, deference." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)). However, such opinions do not automatically bind the ALJ, as

---

[1] Despite Plaintiff's assertion that the ALJ gave more credibility to the non-examining agency physicians, the ALJ did not err in his evaluation of the medical opinion evidence. As discussed herein, the ALJ considered all of the medical evidence of record, in addition to Plaintiff's testimony, when evaluating the medical opinions. Moreover, the ALJ did not give "more credibility" to the non-examining agency physicians. ALJ Paris simply noted that the state agency medical consultants also opined that Plaintiff could perform a reduced range of sedentary work. (Tr. 16).

the opinions of treating physicians are only entitled to controlling weight when they are "supported by objective medical evidence," *Jones*, 336 F.3d 469, 477 (6th Cir. 2003), and are uncontradicted by substantial evidence, *Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 927 (6th Cir. 1987).  If the ALJ finds that the treating physician's opinion fails to meet these two conditions, he may discredit that opinion, so long as he communicates a reasoned basis for doing so.  *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 441 (6th Cir. 2010) (citing *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987)).  "The determination of disability is [ultimately] the prerogative of the [Commissioner], not the treating physician."  *Warner*, 375 F.3d at 390 (quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)) (internal quotations omitted).

In this case, the ALJ rejected Physical and Cervical Spine RFC Questionnaires completed by Dr. Pagani on September 28, 2009.  (Tr. 15, 390-99).  In these questionnaires, Dr. Pagani opined that Plaintiff could only sit and stand/walk for less than two hours each in an eight-hour work day and had significant limitations with reaching, handling and fingering.  (Tr. 392-93).  The ALJ gave "little weight" to Dr. Pagani's opinion because he had only treated the Plaintiff on three occasions and "has not been able to develop a longitudinal picture of the [Plaintiff's] condition."  (Tr. 15).  Furthermore, the ALJ found that his opinion was inconsistent with the objective medical evidence as a whole.  (Tr. 15).

Contrary to Plaintiff's assertion, the ALJ did not impermissibly reject Dr. Pagani's opinion regarding Plaintiff's functional limitations.  A treating physician's opinion is only entitled to deference when it is a *medical opinion*.  *See* 20 C.F.R. § 404.1527(d).  When a treating physician instead submits an opinion on an issue reserved to the

Commissioner–such as whether the claimant is "disabled" or "unable to work" or the claimant's "residual functional capacity"–the opinion is not entitled to any particular weight. 20 C.F.R. § 404.1527(e); *see also Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 578 (6th Cir. 2009) ("Although physicians opine on a claimant's residual functional capacity to work, ultimate responsibility for capacity-to-work determinations belongs to the Commissioner.").

The ALJ afforded little weight to Dr. Pagani's RFC assessments because he had only treated Plaintiff on three occasions and had not been able to develop a longitudinal picture of the Plaintiff's condition. (Tr. 15). Dr. Pagani is a pain management doctor who began treating the Plaintiff on March 19, 2009. (Tr. 384). Plaintiff reports that she sees Dr. Pagani every three months. (Tr. 29, 34). She began treating with Dr. Pagani because, in February 2009, she broke her medication contract with her prior pain management doctor, Dr. Sairam Atluri, and was advised that she could no longer receive opioid pain medication from his practice. (Tr. 339).

Dr. Pagani's treatment notes offer little, if any, objective medical evidence to support the significant limitations contained in his RFC assessments. At Plaintiff's initial visit on March 19, 2009, it does not even appear that Dr. Pagani performed a physical examination as his office notes are silent on this issue. (Tr. 384-86). The treatment notes simply record Plaintiff's medical history and present symptoms and note that her prescriptions were refilled. (Tr. 384-86). On July 29, 2009, Dr. Pagani reported that Plaintiff suffered from chronic low back pain associated with lumbosacral spondylosis. (Tr. 389). Not only was this the first time in two years that Plaintiff even complained of low back pain, but Dr. Pagani made this diagnosis without any supporting objective medical evidence. (Tr. 295, 389). In fact, the sole radiograph of Plaintiff's lumbar spine, taken in May 2007, showed

only "slight narrowing at L5-S1 ... [and] no spondylolysis or spondylolisthesis." (Tr. 296). Further, the extent of Dr. Pagani's physical examination was a straight leg test which revealed "straight leg raising increases back pain bilaterally." (Tr. 389). On September 28, 2009, presumably Plaintiff's third appointment, Dr. Pagani completed the physical and cervical RFC questionnaires. (Tr. 390-99). However, the record is devoid of any office notes from this date, so it is unclear whether Dr. Pagani actually performed a physical examination. Thus, the record reveals that Dr. Pagani's significant limitations were based, not upon objective medical evidence, but upon Plaintiff's subjective complaints and assessment of her own limitations. *See Warner*, 375 F.3d at 391 (concluding that substantial evidence supported the ALJ's rejection of a treating physician's medical opinion where it appeared "to be based not upon his own medical conclusion, but upon the conclusion of a different doctor, as well as [the plaintiff's] own assessment of his . . . limitations"); *Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990) (concluding doctor's report based upon plaintiff's subjective complaints of pain did not constitute objective medical evidence).

Furthermore, the ALJ found Dr. Pagani's opinion to be inconsistent with the objective medical evidence as a whole. (Tr. 15). On November 2, 2006, Plaintiff underwent a cervical diskectomy and fusion with anterior plating at C4-5 and C5-6 due to spondylosis at C4-5 and C5-6 with spurring and loss of disk space. (Tr. 261). Following surgery, Plaintiff indicated that the numbness and tingling in her arms had completely resolved, but she was still experiencing pain in the trapezial region and back of the neck. (Tr. 305). Radiographs taken in December 2006 revealed that the plate and screws were in good position; there was some loss of the normal curve at the C3-4 level, but no other

abnormalities were noted. (Tr. 303). In February 2007, Plaintiff's surgeon, Dr. Michael Kramer, recommended that she return to work full-time. (Tr. 298). However, in May 2007, Plaintiff stated she could not work eight-hour days. (Tr. 295). On physical examination, her strength in the upper and lower extremities was good, but she had a decreased range of motion in her neck related to the fusion. (Tr. 295). In June 2007, Plaintiff was referred to a pain management doctor. (Tr. 292).

On August 20, 2007, Plaintiff saw one-time consultative examiner, Dr. Fritzhand. Plaintiff complained of sharp to dull pain involving the cervical spine with radiation to the interscapular area. (Tr. 270). Dr. Fritzhand noted that Plaintiff's muscle and grasp strength was well-preserved over the upper extremities, and there was no evidence of muscle atrophy. (Tr. 270-71). She ambulated with a normal gait and was comfortable in both sitting and supine positions. (Tr. 271). She had a decreased range of motion in her cervical spine. (Tr. 271). Flexion and extension of the elbows, wrists and knees were normal. (Tr. 271). She could bend forward to ninety degrees and squat without difficulty. (Tr. 271). Despite Plaintiff's complaints of numbness in her index, long and ring fingers bilaterally, all sensory modalities were well preserved, except pin-prick and light touch were diminished over the little fingers bilaterally. (Tr. 271).

In August 2007, an EMG confirmed that Plaintiff suffered from bilateral carpal tunnel syndrome, right worse than left. (Tr. 321). Upon examination, hand surgeon Dr. Paul Fassler noted she had full flexion and extension of the joints of all digits bilaterally, there was no evidence of muscle atrophy, her strength and two-point discrimination were normal bilaterally, Tinel's sign and carpal tunnel compression tests were negative, and she had full range of motion of both elbows without pain. (Tr. 319). Relying on Plaintiff's complaints

9

of pain and other symptoms, Dr. Fassler recommended surgery as it was unlikely that her symptoms would improve without surgical treatment. (Tr. 320). Plaintiff stated she would think about it and has still not undergone the surgery. (Tr. 39).

Following a motorcycle accident in September 2007, radiographs revealed that the fusion was not disrupted and the plate and screws remained midline and in good position. (Tr. 286). Dr. Kramer noted only mild spondylosis at the C3-4 level and did not believe that another fusion would be helpful. (Tr. 286). The most recent records from Dr. Kramer revealed that Plaintiff's strength was good, with only a little weakness in her left arm. (Tr. 373). She had no evidence of myelopathy or radiculopathy. (Tr. 373). Moreover, radiographs from June 2008 also "look[ed] good." (Tr. 373). Furthermore, records from Dr. Atluri in February 2009 noted that Plaintiff had good range of motion in her neck, the upper extremities had normal motor strength and no sensory deficits could be appreciated in the upper extremities. (Tr. 339). She received a cervical epidural steroid injection on February 26, 2009 but reported that it made the pain worse. (Tr. 30, 332). Despite Plaintiff's continued complaints of pain, she stated that she was not interested in physical therapy or Lidoderm patches. (Tr. 339). Based on the foregoing, the objective medical evidence does not support Dr. Pagani's significant limitations. Therefore, the Court finds that substantial evidence exists to support the ALJ's determination to give little weight to Dr. Pagani's RFC assessments.

    **ii. Dr. Martin Fritzhand**

Dr. Martin Fritzhand was a one-time consultative examiner who examined the Plaintiff in August 2007. Unlike treating source opinions, consultative examiners' opinions are not entitled to any "special degree of deference." *Barker v. Shalala*, 40 F.3d 789, 794

(6th Cir. 1994); *Atterberry v. Sec'y Health & Human Servs.*, 871 F.2d 567, 572 (6th Cir. 1989) (physician who examined claimant only once was not a treating physician). While examining medical sources are generally given more weight than non-examining medical sources, all medical opinions are subject to evaluation. 20 C.F.R. § 416.927(d)(1); *see also* SSR 96-6p, 1996 WL 374180, at *3 (July 2, 1996) ("In appropriate circumstances, opinions from State agency medical ... consultants ... may be entitled to greater weight than the opinions of treating or examining sources."). The weight given a medical opinion depends upon the extent to which it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." 20 C.F.R. § 416.927(d)(2). When evaluating a medical opinion, a number of factors are considered, including (1) the examining relationship; (2) the treatment relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion was regarding an area in which the medical source specializes; and (6) any other factors which tend to support or contradict the opinion. *Id.* at 416.927(d).

In the instant case, Dr. Fritzhand stated in his narrative report: "[Plaintiff] has ongoing neck pain exacerbated by more than a minimal amount of activity." (Tr. 272). Plaintiff believes this opinion supports her claim for disability. However, the ALJ found that Dr. Fritzhand offered a vague opinion which did not relay any specific limitations for the Plaintiff and, accordingly, gave no weight to Dr. Fritzhand's statement. (Tr. 15).

As referenced above, Dr. Fritzhand's examination revealed mild findings with respect to Plaintiff's functional abilities. (Tr. 270-72). Besides finding a decreased range of motion in the cervical spine and depressed sensory modalities over the little fingers only, Plaintiff's

11

examination was relatively unremarkable. (Tr. 271). Plaintiff ambulated with a normal gait and was comfortable in both sitting and supine positions. (Tr. 271). Her muscle and grasp strength was well-preserved over the upper extremities, and there was no evidence of muscle atrophy. (Tr. 270-71). Flexion and extension of the elbows, wrists and knees were normal. (Tr. 271). She could bend forward to ninety degrees and squat without difficulty. (Tr. 271). Despite Plaintiff's complaints of numbness in her index, long and ring fingers bilaterally, all sensory modalities were well preserved in these fingers. (Tr. 271). Further, the grasp strength and manipulative ability in her hands were well-preserved bilaterally. (Tr. 272). Clearly, these findings do not support an opinion that Plaintiff cannot perform more than a minimal amount of activity.

Moreover, Dr. Fritzhand appears to have based his opinion not upon the objective medical evidence, but upon a statement made by Dr. Kramer in June 2007. (Tr. 272). Dr. Kramer noted that "even with sedentary activity she still has some problems, but it is better than when she is trying to work." (Tr. 272, 292). A review of Dr. Kramer's records indicate that his statement was made based solely on Plaintiff's subjective complaints. (Tr. 292). As stated above, substantial evidence supports an ALJ's rejection of a physician's medical opinion where that opinion appeared "to be based not upon his own medical conclusion, but upon the conclusion of a different doctor, as well as [the plaintiff's] own assessment of his ...limitations. *Warner*, 375 F.3d at 391. Consequently, the ALJ properly rejected Dr. Fritzhand's statement that Plaintiff's ongoing neck pain was exacerbated by more than a minimal amount of activity, and the ALJ's decision to do so was supported by substantial evidence.

### 2. The Hypothetical Posed to the VE Accurately Described Plaintiff's Functional Limitations

Plaintiff argues that the hypothetical question posed to the VE was inadequate because it failed to incorporate all of the limitations assessed by Plaintiff's physicians. Specifically, Plaintiff argues that the hypothetical posed to the VE should have included limitations on Plaintiff's hands due to her bilateral carpal tunnel syndrome. In the instant case the ALJ gave the VE the following hypothetical:

> The claimant has the [RFC] to occasionally lift and carry 10 pounds, frequently less than 10 pounds. Stand and walk a total of six hours in an eight-hour day, together a total of six hours in an eight-hour day. No more than frequent push/pull or use of hands controls with upper extremities, only occasional climbing of stairs and ramps, and the ladder. Only occasional stooping, kneeling or crouching, never crawling, only occasional reaching in all directions including overhead, no more than frequent handling ... handling defined as seizing, holding and grasping, [turning] or otherwise working primarily with the hands or hand. No frequent flexing or extension of the [head] from side to side, and she should avoid concentrated exposure to full-body vibrations.

(Tr. 52). The VE responded that, based on that hypothetical, Plaintiff could perform her past job in data entry. (Tr. 52). Additionally, the VE testified that Plaintiff would be able to perform other jobs such as an information clerk or bench assembly jobs. (Tr. 53). According to the Dictionary of Occupational Titles (DOT), these three jobs require either frequent or constant fingering and frequent handling. Plaintiff contends that the substantial evidence of record clearly refutes that she can use her hands and fingers to this degree. The Court disagrees.

To meet his burden at Step 5 of the sequential evaluation, the ALJ must make a finding "'supported by substantial evidence that [Plaintiff] has the vocational qualifications to perform specific jobs.'" *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779

(6th Cir. 1987) (quoting *O'Banner v. Sec'y of Health, Educ. & Welfare*, 587 F.2d 321, 323 (6th Cir. 1978)).  A VE's testimony in response to a hypothetical question will provide substantial evidence of claimant's RFC to perform work in the national economy where the question posed accurately reflected the claimant's physical and mental impairments.  *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) (though an ALJ need not list a claimant's medical conditions, the hypothetical should provide the vocational expert with the ALJ's assessment of what the claimant "can and cannot do").  It is well established, however, that an ALJ need only include those restrictions which enjoy support when assessed against the backdrop of the entire record of objective medical evidence.  *Stanley v. Sec'y Health & Human Servs.*, 39 F.3d 115, 118-19 (6th Cir. 1994) (in formulating a hypothetical question, the ALJ need only incorporate those limitations which he has deemed credible).

As discussed previously, the ALJ provided legally sufficient reasons for rejecting Dr. Pagani's RFC assessment that significantly limited Plaintiff's reaching, handling and fingering abilities; therefore, the ALJ was not required to include Dr. Pagani's limitations in his hypothetical to the VE.  *See Gant v. Comm'r Soc. Sec.*, 372 F. App'x 582, 585 (6th Cir. 2010) ("Because the ALJ properly discounted the medical opinions of the other doctors, he also properly excluded the limitations assessed by those doctors from the hypothetical question.").  While the ALJ certainly acknowledged that Plaintiff suffered from bilateral carpal tunnel syndrome, he also noted that the objective medical evidence revealed that Plaintiff's grasp strength and manipulative ability were well-preserved bilaterally.  (Tr. 15). Indeed, hand surgeon specialist, Dr. Fassler, found that Plaintiff had full flexion and extension of the joints of all digits bilaterally, there was no evidence of muscle atrophy, her

strength and two-point discrimination were normal bilaterally, Tinel's sign and carpal tunnel compression tests were negative, and she had full range of motion of both elbows without pain. (Tr. 319).

Furthermore, Plaintiff's lack of compliance with Dr. Fassler's recommendation for bilateral carpal tunnel releases caused the ALJ to give less weight to Plaintiff's testimony that she is unable to work due to numbness in her hands that causes her to occasionally drop things. (Tr. 15, 32). Plaintiff's failure to seek prescribed treatment certainly provided a sufficient basis for the ALJ to discount Plaintiff's allegations of pain. *See* SSR 96-7p, 1996 WL 374186, at *7 (July 2, 1996) (The Plaintiff's statements "may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure."). Plaintiff attempts to mitigate her noncompliance by stating that she cannot have the surgeries because she cannot afford them and has no one to take care of her. However, the record reveals otherwise.

While it is true that Plaintiff's financial status has caused her to live in a shed without a kitchen or bathroom on her daughter's property, she testified that she has medical insurance. (Tr. 24, 39). Additionally, Plaintiff's poverty has not stopped her from receiving other medical treatment and procuring prescribed opioid pain medication on a regular and continuing basis. (Tr. 333-39, 385-88). Moreover, Plaintiff's claim that she has no one to take care of her is also without merit. Plaintiff has lived on her daughter's property for over a year. (Tr. 24). She eats meals with her daughter and interacts with her grandchildren. (Tr. 36). Plaintiff's daughter does her laundry. (Tr. 37). Plaintiff also has a boyfriend who she sees a couple of times each week. (Tr. 35). He comes over to her place and takes her

15

to the grocery store, cookouts with friends, and to visit their parents. (Tr. 35). Her daughter and boyfriend also accompanied her to the hearing. (Tr. 25). In light of these facts, it was not unreasonable for the ALJ to conclude that Plaintiff failed to comply with Dr. Fassler's recommendation due to the moderate nature of her condition, rather than a lack of financial resources or support.

Based on the objective medical evidence and Plaintiff's own testimony, the ALJ concluded that a limitation of "no more than frequent handling" adequately described Plaintiff's functional limitations due to her bilateral carpal tunnel syndrome. (Tr. 13). The Court finds that this limitation is supported by substantial evidence in the record, and, consequently, the ALJ did not err in accepting and relying upon the testimony of the VE.

### III. CONCLUSION

Therefore, for the reasons stated herein, the Court concludes that the ALJ's RFC determination and his finding that Plaintiff was not disabled for purposes of the Social Security Act is supported by substantial evidence. Although the record contains differing opinions as to the extent of Plaintiff's exertional and non-exertional limitations, the Court finds that the ALJ properly performed his duty as trier of fact in resolving the conflicts in evidence. *See Richardson v. Perales*, 402 U.S. 389, 399 (1971). Accordingly,

**IT IS ORDERED** as follows:

1. The decision of the Commissioner is supported by substantial evidence and is hereby **AFFIRMED**;

2. Plaintiff's Motion for Summary Judgment (Doc. # 11) is hereby **DENIED**;

3. Defendant's Motion for Summary Judgment (Doc. # 14) is hereby **GRANTED**; and

4. A Judgment affirming this matter will be entered contemporaneously herewith.

This 3rd day of May, 2011.



Signed By:
*David L. Bunning* DB
United States District Judge

G:\DATA\SocialSecurity\MOOs\Covington\2-10-149 McCubbin MOO.wpd